
HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| GURGLEPOT, INC., <br><br>                    Plaintiff, <br><br>           v. <br><br> NEW SHREVE, CRUMP & LOW LLC, <br><br>                    Defendant. | CASE NO. C13-6029 RBL <br><br> ORDER ON MOTION TO DISMISS OR TRANSFER VENUE |

THIS MATTER is before the Court on New Shreve, Crump & Low's Motion to Dismiss or, Alternatively, to Transfer Venue [Dkt. # 19]. New SCL is a Delaware corporation with its principal place of business in Massachusetts. GurglePot, a Washington company, sued New SCL for a declaratory judgment, alleged violations of the Lanham Act, false advertising, and tortious interference. The claims arise out of a trade dress dispute over the parties' competing (or at least similar) fish-shaped water dispensers. New SCL sent cease-and-desist letters to GurglePot and one of its customers, Alfred F. DeScenza & Son, Inc.

New SCL asserts that the Court does not have personal jurisdiction over it. GurglePot argues that this Court has general jurisdiction over New SCL based on New SCL's online sales, licensing agreements, and nationwide reputation. Alternatively, GurglePot argues that the Court

has specific jurisdiction because the claims arose out of New SCL's cease-and-desist letters, which were sent to and impacted Washington entities.[1]

## I. BACKGROUND

New SCL has operated the Shreve, Crump & Low jewelry stores in Massachusetts since 2006. One of the store's signature pieces is a cod-shaped, "gurgling" water jug known as a Gurgling Cod. The design of the jug is protected under trademark law as a non-functional trade dress associated with New SCL. New SCL currently has a non-exclusive licensing agreement for this trademark with Wade Ceramics. Wade Ceramics sells and markets gurgling cods in Washington. GurglePot is a Washington-based company that also sells a fish-shaped, "gurgling" water jug. GurglePot's owner, Matthew Ellison, began selling the jugs in 2006. GurglePot has sold its jugs to individuals and retailers throughout the nation.

In September of 2013, New SCL learned about GurglePot's gurgling jug and sent GurglePot a cease-and-desist letter. The letter notified GurglePot of its trademark violation and suggested a licensing agreement instead of litigation. Two months later, New SCL sent a similar letter (without the licensing option) to DeScenza, a company that was selling GurglePot's products in its Boston store. Shortly after New SCL sent those letters, GurglePot initiated this action.

New SCL challenges this Court's personal jurisdiction over it. New SCL is incorporated in Delaware and does not have any offices, employees, or other physical presences in the State of Washington. It does, however, operate an online store. GurglePot argues that general personal jurisdiction exists because of New SCL's online sales to Washington; because of the connections

---

[1] In order to fairly determine jurisdiction, GurglePot's Motion to File a Second Amended Complaint is granted and was reviewed in determining jurisdiction.

New SCL's licensee, Wade Ceramics, has to Washington; and because of the nationwide notoriety of New SCL's products. GurglePot further argues that specific personal jurisdiction exists because New SCL sent cease-and-desist letters and licensing offers to Washington. But cease-and-desist letters are not sufficient to establish personal jurisdiction and New SCL does not otherwise have substantial or continuous and systematic contacts with the State of Washington. In the interest of justice, however, New SCL's Motion to Dismiss is DENIED conditioned upon the transfer of the case to the District of Massachusetts

## II.   DISCUSSION

### A.  12(b)(2) Personal Jurisdiction Standard

The Court must dismiss an action if it determines that it lacks personal jurisdiction over a defendant. Fed. R. Civ. P. 12(b)(2).  Jurisdiction is a threshold issue, and courts must address jurisdictional challenges before considering the merits of a case. *Steel co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998) (rejecting approach by various lower courts in assuming jurisdiction for purpose of deciding on the merits). In a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction a court may consider "affidavits or any other evidence properly before the court," including material extrinsic to the pleadings. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001).

In the context of a challenge to the Court's jurisdiction, a plaintiff's factual allegations are construed in the light most favorable to him.  Plaintiff is required only to make a prima facie showing of personal jurisdiction. *See Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1082, 1087 (Fed. Cir. 2003).

Washington's long-arm statute (RCW 4.28.185) represents legislative intent to assert personal jurisdiction over a foreign entity to the full extent permitted by due process. *Byron Nelson Co. v. Orchard Mgmt. Corp.*, 95 Wn. App. 462, 465 (1999).  "[D]ue process requires

only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Personal jurisdiction under this rule can be either general or specific.

### B. General Jurisdiction

General jurisdiction exists over a defendant where it engages in "continuous and systematic general business contacts" in the forum. *Helicopeteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). General jurisdiction requires a much more substantial connection to the forum than does specific jurisdiction. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1985). The Court must consider "all of the defendants' activities that impact the state, including whether the defendant makes sales, solicits or engages in business, serves the state's market, designates an agent for service of process, holds a license, has employees, or is incorporated there." *Hirsch v. Blue Cross, Blue Shield of Mississippi*, 800 F.2d 1474, 1478 (9th Cir. 1986). It is extremely rare for federal courts to find general jurisdiction because the standard is very high. General jurisdiction can be found "only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman*, 134 S.Ct. 746, 751 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2851 (2011)).

#### 1. New SCL's Online Activity

GurglePot argues that New SCL's website, which hosts a store that sells to Washington, establishes general jurisdiction. Hosting a website accessible from any state is not alone enough to establish general jurisdiction. *Mavrix Photo, Inc. v. Brand Techs, Inc.*, 647 F.3d 1218 (9th Cir. 2011). The 9th Circuit distinguishes doing business in a forum state, which establishes general

jurisdiction, and doing business with a forum state, which does not. *Id.* For instance, even if items are sold to and business is conducted with forum residents, "engaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders." *Bancroft & Masters, Inc. v. Augusta Nat., Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).

GurglePot has failed to show that New SCL's online activity rises to the level of "substantial" or "continuous and systematic" contacts in Washington. GurglePot has only alleged that New SCL's website allows products to be sold and shipped to Washington residents. GurglePot has not shown that the website creates continuous and systematic contacts with the State of Washington. Nor has GurglePot alleged that New SCL targets Washington through advertising or business deals. A website with the possibility of sales alone is not enough to establish the continuous and systematic general business contacts required to establish general jurisdiction.

**2. New SCL's Contacts Through Wade Ceramics**

GurglePot also argues that the Court has general personal jurisdiction over New SCL because it has a licensee, Wade Ceramics, doing business in Washington. A licensor/licensee relationship does not establish general jurisdiction wherever the licensee conducts business. *Lab Corp. of Am. Holdings v. Schumann*, 474 F. Supp. 2d 758, 763 (M.D.N.C. 2006) ("royalty payments from a license do not constitute purposefully directed activity within a state where the licensee chooses to do business."). Even where a relationship goes beyond royalties, a company must have complete control of a subsidiary in order for general jurisdiction to be imputed to the parent. *Hanson Pipe & Products, Inc. v. Bridge Techs L.L.C.*, 351 F. Supp. 2d 603, 611-612 (E.D. Tex. 2004).

GurglePot does not allege that New SCL has substantial control over Wade. Although GurglePot alleges New SCL controls Wade's product image and quality, GurglePot does not allege that New SCL controls Wade's sales or marketing. Because GurglePot does not allege that New SCL substantially controls Wade's actions in Washington, general jurisdiction cannot be imputed to New SCL.

### 3. New SCL's Nationwide Recognition

Lastly, GurglePot argues that the Court has general jurisdiction over New SCL because it claims to have a nationwide reputation. GurglePot, however, has failed to show that New SCL's reputation establishes general jurisdiction. There is no law to support the argument that reputation implies continuous and systematic contact and none was provided by GurglePot.

### C. Specific Jurisdiction

### 1. Federal Law Claims

GurglePot argues that the Court has specific jurisdiction over its federal claims because they arise out of cease-and-desist letters New SCL sent to Washington with the intent to impact a Washington resident. Whether an exercise of specific personal jurisdiction satisfies due process in a patent case depends on three factors: (1) whether the defendant "purposefully directed" its activities at residents of the forum; (2) whether the claim ''arises out of or relates to" the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is "reasonable and fair". *Silent Drive, Inc. v. Strong Industries, Inc.*, 326 F.3d 1194, 1201-02 (Fed. Cir. 2003), *citing Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1359, (Fed. Cir. 2001). The first two factors relate to the "minimum contacts" prong of the familiar test of *International Shoe Co. v. Washington*, 326 U.S. 310, 316, (1945), and the third corresponds to the "fair play and substantial justice" prong of that test. Thus, this three-part test corresponds to the three-prong due process test for specific jurisdiction generally. *Id.*

Sending letters threatening infringement litigation does not, without more, confer personal jurisdiction. *Silent Drive*, 326 F.3d at 1202, citing *Red Wing Shoe Co. v. Hockerson–Halberstadt*, Inc., 148 F.3d 1355, 1358 (Fed.Cir.1998). In *Red Wing*, the Court acknowledged that such letters satisfied the first two prongs of the test, but explained that finding them to confer personal jurisdiction would violate the third:

> Principles of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum. A patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement. Grounding personal jurisdiction on such contacts alone would not comport with principles of fairness.

148 F.3d at 1360–61. The same result is reached where, as here, the letters are sent to a third-party customer in another jurisdiction. Furthermore, the inclusion of an offer to license does not change this analysis because "[a]n offer to license is more closely akin to an offer for settlement of a disputed claim rather than an arms-length negotiation in anticipation of a long-term continuing business relationship." *Id.* at 1361 "Treating such hybrid cease-and-desist letters differently would also be contrary to fair play and substantial justice by providing disincentives for the initiation of settlement negotiations." *Id.*

There are circumstances that, when present in addition to cease-and-desist letters, can establish specific jurisdiction. *Campbell Pet Co. v. Miale*, 542 F.3d 879, 887 (Fed. Cir. 2008) (granting personal jurisdiction when defendant attempted to have plaintiff removed from a sales convention); *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1366-67 (granting personal jurisdiction where defendant's exclusive licensee conducts business in the forum state); *Bancroft*, 223 F.3d at 1088 (granting personal jurisdiction when defendant sent a letter protesting plaintiff to a third party); *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063 (10th Cir. 2008) (granting personal jurisdiction when defendant contacted eBay to

prevent plaintiff's auction). These types of activities grant specific jurisdiction because the defendant in each case either had an exclusive interest in the state or participated in "extra-judicial-enforcement" in the forum state. *Campbell*, 542 F.3d at 886.

GurglePot has failed to allege any activity that can give rise to specific jurisdiction for the federal claims. All of GurglePot's allegations are based on its licensee's activities and the cease-and-desist letters sent to GurglePot and a third-party customer. None of these actions are sufficient to establish specific personal jurisdiction. Although New SCL's licensee, Wade, operates in Washington, their relationship is not exclusive and therefore cannot establish specific jurisdiction. *Red Wing*, 148 F.3d at 1359, 1361 (denying personal jurisdiction where defendant who sent cease-and-desist letters also had thirty-four non-exclusive licensees operating in the forum state to various degrees). What is more, the third party letter sent to DeScenza, though possibly similar in intent to the actions in *Bancroft* and *Dudnikov*, was nothing more than a cease-and-desist letters. As discussed above, letters like that cannot be included in the category of "extra-judicial-enforcement" and cannot by themselves give the court specific jurisdiction.

**2. State Law Claims**

GurglePot further argues that the Court has specific jurisdiction over its state law claims because New SCL's actions were directed at harming a Washington resident. New SCL argues in response that the state law claims are preempted by federal trademark law. The law of the Federal Circuit governs the question of whether a state law claim is preempted by federal trademark law. *Globetrotter Software, Inc. v. Elan Computer Group*, 362 F.3d 1367, 1374 (Fed. Cir. 2004); *Zenith Electronics Corp. v. Elgo Touchsystems, Inc.*, 182 F.3d 1340 (Fed. Cir. 1999). Under Federal Circuit law, state law tortious interference claims based on the sending of cease-and-desist letters are preempted by the federal patent law, absent a showing of bad faith on the

part of the sender.  In *Globetrotter*, the Federal Circuit explained that in this context, demonstrating bad faith requires the plaintiff to allege and prove that the sender's claim of infringement was "objectively baseless."  *Globetrotter*, 362 F.3d at 1375.

The issue, then, is whether the Court has personal jurisdiction over New SCL based on a sufficient factual basis shown by GurglePot that New SCL's claims were "objectively baseless" and thus the cease-and-desist letters were sent in bad faith. In support of its argument, GurglePot points to a long history of other companies, including itself, making and selling similar vessels in the United States. GurglePot also points to the many dissimilarities between the GurglePot and the Gurgling Cod.

While the two products contain distinctions, it is not impossible that the two products could be confused. Both products are fish-shaped vessels containing similar eyes and fins with the tail as the handle and the mouth as the opening. Given those similarities, a consumer could think the GurglePot is a New SCL product. Furthermore New SCL has successfully asserted its trademark rights against at least one other company that sells a large volume of similar fish shaped vessels in the United States. Asserting rights that have been successfully asserted before is not "objectively baseless." GurglePot, therefore, cannot establish specific personal jurisdiction because it has not shown that its state tort claims can preempt the federal claims for which specific jurisdiction does not exist.

### D. Change of Venue

Even if the Court did have specific personal jurisdiction, venue is not proper here. Venue can be proper in three places: where the defendant resides, where "a substantial part of the events or omissions giving rise to the claim occurred," or wherever personal jurisdiction exists. 28 U.S.C. § 1391(b). New SCL does not reside in Washington nor did a substantial part of the

events take place in Washington. Additionally, the court has already found that personal jurisdiction does not exist in here. In lieu of dismissal, and in the interest of justice, the Court will transfer the case to the District of Massachusetts. 28 U.S.C. § 1406(a).

### III.   CONCLUSION

This Court finds that there is no personal jurisdiction over New Shreve, Crump & Low LLC.  GurglePot has not met their burden to show that: (1) general jurisdiction exists because New SCL had continual and systematic general business contacts in the state of Washington or (2) that specific jurisdiction exists because the exercise of jurisdiction over New SCL would be reasonable.  To promote justice, however, the Motion to Dismiss is DENIED conditionally upon the transfer of the case to the District of Massachusetts

IT IS SO ORDERED.

Dated this 17th day of June, 2014.

*[signature: Ronald B. Leighton]*

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE